# IN THE COURT OF APPEALS OF IOWA

No. 24-0986
Filed May 21, 2025

**FLORIN TRUST,**

    Plaintiff-Appellee,

**vs.**

**SANDRA P. GUDINO, Individually, and THE SANDRA P. GUDINO FAMILY PARTNERSHIP,**

    Defendants-Appellants.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Blake H. Norman, Judge.

A party to a real estate agreement appeals a ruling for judgment in favor of the other party. **AFFIRMED.**

Ronald D. Arispe, Clear Lake, for appellants.

John P. Lander, Mason City, for appellee.

Considered without oral argument by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Sandra Gudino appeals a ruling finding her real estate agreement was not unconscionable and declaring Florin Trust (the Trust) is the legal owner and entitled to possession of a house. Finding the agreement was not unconscionable, we affirm.

### I.   Background Facts and Proceedings

In 2006, Sandra Gudino and her husband Hector purchased a house[1] in Mason City. After Hector passed away in 2012, Sandra filed an affidavit as the surviving joint tenant reflecting her sole ownership of the house.

By 2022, Gudino had fallen several years behind on paying property taxes on the house. The house was sold at a tax sale. During the redemption period, Property Savers, LLC sent Gudino a letter offering to help pay her taxes. Property Savers was owned by Glenda Avila and her husband. Gudino called Property Savers and scheduled a meeting in August.

A few days before the end of the redemption period from the tax sale, Gudino, Avila, and a notary met at Gudino's house. Gudino signed a warranty deed transferring the house to Property Savers, and Property Savers paid the $7408 owed in back taxes and interest. Property Savers and the Sandra P. Gudino Family Partnership[2] immediately entered into a real estate contract for the house, with Gudino agreeing to purchase the house back for $28,800—in monthly installments of $400 for six years—and to pay any future taxes due. The sale price

---

[1] While "property" is the more accurate term, we use "house" for readability.

[2] There is little to no evidence the family partnership existed outside of this real estate contract. And Gudino denied the partnership existed at trial.

was based on "about three times the amount of the back taxes." Gudino did not make any payments on the contract and did not pay the house's real estate taxes during the contract. In December, Property Savers transferred the house to the Trust for $6000. Avila is the sole trustee of the Trust.

In May 2023, the Trust served notice on Gudino and the Gudino Family Partnership noting the failure to pay the principal and interest as well as property taxes for the past eight months. The notice gave Gudino thirty days from the date of service to cure. Gudino made no payment. After the cure period passed in June, the Trust filed an affidavit of forfeiture. In October, the Trust sent to Gudino by certified mail a lease agreement for the house; the accompanying letter noted that, even if she did not sign, her "acceptance of possession gives the rental agreement the same effect." The letter and lease were eventually returned to the Trust's attorney as unclaimed. While the letter was out for delivery, the Trust had a notice of termination of tenancy personally served on Gudino. The termination notice instructed Gudino to "surrender possession and vacate the premises on or before November 30, 2023." Gudino took no action, and in early December the Trust filed a three-day notice to quit. Gudino still did not vacate, and the Trust filed this action for immediate possession of the house.

Gudino asserts she thought Property Savers was offering her a loan, not that she was selling her house. During the initial meeting with Avila, Gudino had the chance to ask questions, and Avila explained the documents, but it was "too much." She claims to not remember signing the warranty deed transferring the house to Property Savers, but she agreed the signature on the contract to buy back the house looked like hers. According to Gudino, she did not receive a copy

of any of the documents she signed with Property Savers. She recognized the interest rate was very high, but she did not seek legal help or go talk to her bank about a loan because she was focused on her health and problems with her grandson. Gudino agreed she knew she was supposed to pay the property taxes plus the payments on the house and had not paid any of them. She testified she tried to contact Avila in May 2023 to catch up on her payments, but Avila wanted the house and no payments. Gudino also said she didn't have an address to send her payments to until she received the May 2023 notice of delinquency.

The district court determined that while "Gudino made a bad bargain," the unconscionability doctrine did not rescue her from her bad decision. The court did not find any procedural concerns to render the contracts unconscionable—no fine print, no deceptive captioning or terms, and no false or fraudulent statements. Gudino has a college education, has owned a home before, and appeared capable of understanding the agreement despite English being her second language. Moreover, she was the party requesting the negotiations and chose not to consult an attorney or her banker. Nor did the court find the agreement substantively unconscionable: Gudino could have made the monthly payment and appeared to have no other debt, and the agreement was made "without an appraisal or inspection and possibly without any credit check." Instead, Gudino forfeited the contract by never making any payments and failing to cure, and she did not identify any procedural errors under Iowa Code chapter 656 forfeiture procedures. Because Gudino had no legal right to continued possession, the court granted the Trust's requested relief.

Gudino appeals, arguing the overall agreement scheme was unconscionable and therefore invalid.

## II.    Standard of Review

This case was pled and tried in equity, so our review is de novo.  Iowa R. App. P. 6.907.  We give weight to the trial court's fact-findings, especially as to credibility of the witnesses, but are not bound by them.  Iowa R. App. P. 6.904(3)(g).

## III.    Discussion

Gudino alleges the agreements were unconscionable because the parties had unequal bargaining power and she understood them to be a loan agreement. She also argues the terms of the agreement are unconscionable—"one-sided, oppressive, and harsh"—particularly the difference between the amount provided by the Trust compared to what Gudino was to pay.  She claims because the contract was unconscionable and therefore invalid, the court should not have enforced the forfeiture.[3]

"A contract is unconscionable where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand."  *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 80 (Iowa 2011).  "In considering such claims, we consider the factors of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness."  *Id.*

---

[3] Since Gudino only seeks to void the contract as unconscionable, we do not consider whether enforcement of the forfeiture was improper because the transaction could or should have been treated as an equitable mortgage.  *See, e.g., Tullis v. Weeks*, No. 06-1744, 2007 WL 2964184, at *2–3 (Iowa Ct. App. Oct. 2, 2007).

(cleaned up). "[T]his defense does not exist to rescue a party from an imprudent bargain or buyer's remorse." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 704 (Iowa 2020). Unconscionability "encompasses both procedural abuses arising from the contract's formation and substantive abuses related to the contract's terms." *C & J Vantage*, 795 N.W.2d at 81. "The burden of proving a particular provision or contract is unconscionable rests on the party claiming the invalidity unless it is unjust and unreasonable on its face." *Frontier Leasing Corp. v. Waterford Golf Assocs., L.L.C.*, No. 10-0019, 2010 WL 4484390, at *5 (Iowa Ct. App. Nov. 10, 2010).

Factors that indicate procedural unconscionability include "an advantaged party's exploitation of a disadvantaged party's lack of understanding, unequal bargaining power," "the use of fine print and convoluted language," whether the disadvantaged party had an "opportunity to seek independent counsel," and "the use of fraudulent or deceptive practices." *Retterath*, 938 N.W.2d at 705 (citations omitted). Substantive unconscionability "focuses on the harsh, oppressive, and one-sided terms of a contract." *Id.* at 707 (cleaned up).

Gudino has not established procedural unconscionability. She was the party seeking to contract with Property Savers to retain her home after it was sold for unpaid taxes. Although she asserts she was disadvantaged because English is her second language and she worked at blue-collar jobs, she also owned property for many years, had been in the United States for more than three decades, was college-educated, and—from her own testimony—understood the terms sufficiently to recognize the high interest rate. Rather than go to her bank for a loan or seek advice from an attorney, she accepted the contract's terms. The

district court observed that the documents used appeared to be on standard forms that complied with the applicable statutes. The fact that Gudino may have still understood the arrangement to be a loan does not render it unconscionable.

Nor is the contract substantively unconscionable. Again, Gudino could have sought out a loan from her bank and did not. Property Savers did not complete an appraisal or inspection on the house. Gudino had a history of not paying her property taxes to the point she was days away from losing her home. The monthly payments were reasonably within Gudino's ability to pay. And both parties received a benefit from the transaction: Gudino obtained immediate redemption of her tax debt while Property Savers received interest and the ability to seek forfeiture in the event of default. Gudino then continued living in the house while knowingly not making her monthly payments or paying the property taxes—a failure which cannot be condoned whether under a real estate purchase agreement or a loan agreement. We agree with the district court that the real estate contract and the warranty deed are not substantively unconscionable.

The real estate agreements were not unconscionable, and we affirm the court's ruling declaring the Trust the legal owner entitled to possession of the house.

**AFFIRMED.**